**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

ERIC MICHAEL CRAPSER,

      Petitioner,

v.                                  Case No.  4:18-cv-309-RH-MJF

MARK S. INCH,

      Respondent.

_____/

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Eric Crapser, represented by counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1), with a supporting memorandum. (Doc. 6). Respondent ("the State") filed an answer, providing relevant portions of the state court record. (Doc. 11). Crapser replied. (Doc. 13). The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Crapser is not entitled to habeas relief.[1]

---

[1] This case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I.   Background and Procedural History

Crapser was charged in Leon County Circuit Court Case No. 2008-CF-1943, with sexual battery of his 7-year old stepdaughter, K.L. (Count I), and lewd or lascivious molestation of K.L. (Count II). (Doc. 11, Ex. A1 at 19).[2] K.L. reported that between February 1, 2008, and May 28, 2008, Crapser licked her vagina on one occasion and touched her vaginal area with his hand on more than one occasion. (Ex. A1 at 19 (amended information); *see also* Ex. B1 (trial transcript)). Crapser was tried by a jury, (Ex. B1), and found guilty of misdemeanor battery (a lesser included offense of sexual battery) on Count I, and lewd or lascivious molestation (as charged) on Count II. (Ex. A1 at 123-24 (verdict)).

The trial court adjudicated Crapser guilty of those crimes and sentenced him to 356 days of imprisonment for the battery, with 356 days of credit for time served. The court sentenced Crapser to 25 years of imprisonment for the molestation, followed by a lifetime on sex offender probation. (Ex. A2 at 248-66 (sentencing transcript); Ex. A1 at 132-42 (judgment)).

---

[2] Citations to the state court record are to the electronically filed exhibits attached to the State's answer. (Doc. 11). If a page of an exhibit bears more than one page number, the court cites the number appearing at the bottom right corner of the page.

On September 16, 2014, the Florida First District Court of Appeal ("First DCA"), affirmed Crapser's convictions and sentences "without discussion," but remanded concerning certain court costs, fines and surcharges, ordering that they be properly imposed, stricken, or reduced as instructed in the opinion. *Crapser v. State*, 148 So. 3d 794 (Fla. 1st DCA 2014) (Mem.) (copy at Ex. G). Crapser sought certiorari review in the Supreme Court of the United States, but the Court denied review on March 9, 2015. *Crapser v. Florida*, 575 U.S. 903 (2015). The state trial court chose not to hold a resentencing hearing concerning the improperly imposed fine, surcharge, and cost, and instead directed the clerk of court to strike or reduce those financial penalties pursuant to the remand instructions. (Ex. H). An amended judgment was entered on April 30, 2015, *nunc pro tunc* to June 12, 2012. (*Id.*).

On March 7, 2016, Crapser filed a counseled motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, (Ex. I), which he later amended. (Ex. J at 3-18). After conducting an evidentiary hearing, the circuit court entered a final order denying postconviction relief. (Ex. J at 29-30 (final order), 34-63 (evidentiary hearing transcript)). The First DCA affirmed *per curiam* without written opinion. *Crapser v. State*, 253 So. 3d 1076 (Fla. 1st DCA 2018) (Table) (copy at Ex. N). The mandate issued July 2, 2018.

Crapser filed his counseled federal habeas petition on July 2, 2018, raising three claims. (Doc. 1). The State asserts that Crapser is not entitled to habeas relief for one or more of the following reasons: (1) the *Stone v. Powell* doctrine bars federal habeas review of the claim, *see Stone v. Powell*, 428 U.S. 465 (1976); (2) the claim is procedurally defaulted; and (3) Crapser fails to meet § 2254(d)'s demanding standard. (Doc. 11).

## II.    Relevant Legal Principles

### A.    Exhaustion and Procedural Default

Before seeking federal habeas relief under § 2254, the petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claims to the state court, *Picard*, 404 U.S. at 275, "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *French v. Warden, Wilcox State Prison*, 790 F.3d 1259, 1270 (11th Cir. 2015) (quoting *Kelley v. Sec'y Dep't of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004)).

A claim that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40, 848 (1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).

### B.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[3] Justice O'Connor described the appropriate test:

---

[3] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy,

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

---

Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under

AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III. Discussion

**<u>Ground One</u>**    **<u>"The state courts unreasonably applied well-established federal law from the U.S. Supreme Court regarding Fourth Amendment search and seizure protections, warrant requirements, and exceptions thereto, and/or failed to properly extend such well-established federal law to this case." (Doc. 1 at 11).</u>**

Crapser claims that his rights under the Fourth Amendment were violated when law enforcement illegally seized a note written by Crapser, which contained incriminating statements, and used those statements at his trial. (Doc. 1 at 11; Doc 6 at 20-30). Crapser explains that when police responded to his residence to question him about K.L.'s allegations, he answered the door and allowed them inside. He was placed under arrest and invoked his right to remain silent. Officers allowed Crapser to retrieve shoes before going to the jail, and followed him as he did so. In the course of following Crapser, officers walked past a handwritten note lying on a counter. An

officer read the note and seized it. Crapser claims that the search and seizure of the note violated the Fourth Amendment's search and seizure protections, because the officers did not have a search warrant and no exception to the warrant requirement applied. (Doc. 1 at 11-12).

The parties agree that Crapser presented this claim to the state courts at trial and on direct appeal; that the trial court denied the claim on the merits in a reasoned order after a suppression hearing; and that the First DCA affirmed without explanation. (Doc. 1 at 12; Doc. 6 at 20-30; Doc. 11 at 15-16). The State asserts that federal habeas review of this claim is barred by the *Stone v. Powell* doctrine, and that even if reviewable, the claim fails on the merits.

A. **The *Stone v. Powell* Doctrine**

In *Stone v. Powell*, the Supreme Court of the United States held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. at 494 (footnotes omitted). The Court explained that, in the context of collateral review of Fourth Amendment claims, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force."

*Id*. at 494-95 (footnote omitted). "For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court." *Mincey v. Head*, 206 F.3d 1106, 1126 (11th Cir. 2000) (internal quotation marks and citation omitted).

    **B.**    **Application of the *Stone v. Powell* Doctrine to Crapser's Fourth Amendment Claim**

Crapser does not assert that he was not given a full and fair hearing on the merits of his Fourth Amendment claim, nor can he. The record establishes that Crapser raised this Fourth Amendment claim in a pre-trial motion to suppress. (Ex. A1 at 51-54). The trial judge conducted an evidentiary hearing in which he heard testimony and arguments. (Ex. C at 305-405). After the hearing, the judge denied Crapser's motion after making explicit findings on matters essential to the Fourth Amendment issue. (Ex. C at 391-401). Crapser obtained further review of the issue on direct appeal. (Ex. D). The state appellate court affirmed. (Ex. G). Because Crapser had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, *Stone v. Powell* bars federal habeas relief on that claim.

**Ground Two**        **"State courts unreasonably applied well-established federal law from the U.S. Supreme Court regarding due process guarantees under the U.S. Constitution for a criminal Defendant to present witnesses and offer evidence relevant to his defense, and/or failed to properly extend such well-established federal law to the present case." (Doc. 1 at 14).**

Crapser claims that he was denied his constitutional right to present a complete defense when he was barred from presenting testimony that, according to him, supported his theory that K.L. misattributed to him sexual acts perpetrated by other individuals. (Doc. 1 at 14-15; Doc. 6 at 31-34). Crapser's proposed evidence consisted of: (1) testimony by two sheriff's deputies that in February 2009, one Jennifer Howell made child sexual molestation allegations against her then-husband Jonathan Howell involving Mrs. Howell's children (Mr. Howell's stepchildren); (2) testimony by K.L.'s mother that she, her then-husband Stephen, and K.L. "stayed" with the Howells for a short period of time during the summer of 2006; and (3) testimony that K.L.'s younger brothers touched her inappropriately during joint baths and that the brothers sexually touched other children at daycare. (Doc. 1 at 14-15). Crapser claims that the state court's rejection of his due process claim concerning the exclusion of this evidence was contrary to the Supreme Court's decisions in *Chambers v. Mississippi*, 410 U.S. 284 (1973), and *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). (*See* Doc. 6 at 31-34).

The State asserts that this claim is procedurally defaulted, because although Crapser challenged the trial court's exclusion of the evidence on direct appeal, he raised the issue as one of purely state law and not as a federal constitutional violation. (Doc. 11 at 26-27). The State alternatively argues that even assuming to Crapser's benefit that he apprised the state court of the federal constitutional nature of his claim, he is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (*Id*. at 27-40). Crapser's reply urges this court to reject the State's exhaustion defense. (Doc. 13 at 8). This court need not analyze the exhaustion issue, because even deciding that issue in Crapser's favor, he is not entitled to habeas relief.

### A.    Clearly Established Federal Law

"The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (internal quotation marks and citations omitted). "This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Holmes*, 547 U.S. at 324 (internal quotation marks and citations omitted). In contrast to rules that are arbitrary and disproportionate, or that are applied in such a manner, "well-established rules of evidence permit trial judges to exclude evidence if its probative

value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes*, 547 U.S. at 326 (citations omitted).

### B.    Section 2254 Review of State Court Decision

#### i.    *The Trial Court's Rulings*

At trial, Crapser sought to introduce evidence that Mr. Howell was accused of sexually molesting Mrs. Howell's son and daughter. Specifically, the defense proffered the testimony of two Leon County Sheriff's deputies: Christopher Smith and David Knight. (Ex. B1 at 94-103). Deputy Smith testified on proffer that on February 18, 2009, he was contacted by Jennifer Howell, and that Mrs. Howell alleged that her husband, Jonathan Howell, sexually molested her children, who were Mr. Howell's stepchildren. (Ex. B1 at 95-96). Deputy Knight testified on proffer that he was involved in investigating the sexual molestation allegations against Mr. Howell, and that the allegations were: (1) that Mr. Howell inserted an object into Mrs. Howell's son's rectum and licked that child's penis; and (2) that Mr. Howell inserted his fingers into Mrs. Howell's daughter's vagina and licked her vagina. (Ex. B1 at 98-102). Knight testified that at the time Mrs. Howell made her report, Mr. Howell was incarcerated on unrelated charges. (*Id*. at 102). Mr. Howell

committed suicide before the police were able to interview him about these allegations. (*Id.*).

Defense counsel argued that the allegations against Howell were relevant to Crapser's "misattribution" defense, because in 2006, K.L. and her parents lived with the Howells for approximately four weeks. (Ex. C at 289-90, 292-96 (defense argument during pre-trial hearing); Ex. B1 at 93, 103-06 (defense argument during trial proffer)). The State objected to the evidence as irrelevant and speculative, and because its probative value was outweighed by factors such as unfair prejudice. (Ex. A1 at 77-78 (State's motion in limine); Ex. C at 290-92 (pre-trial hearing); Ex. B1 at 103-06 (trial)). The State argued:

> Your Honor, the State stands by it's [sic] previous argument that you can't just throw a shotgun approach to this thing and start naming off people that are potential issues. Reasonable doubt is not a possible, speculative, imaginary or forced doubt. What we have here is a situation where [K.L.'s mother] I think it was in 2006, and her husband, Stephen [redacted] at the time lived at the Howell's residence for a matter of weeks. Not even—as a matter of fact[,] from her own testimony, she doesn't say—I wouldn't necessarily call it living. I just kind of stayed there for a matter of weeks. And then two years later, [K.L.] disclosed this issue with Mr. Crapser. And then the year after that, then we have the allegation against Mr. Howell.
>
> We've got absolutely no evidence saying that any of these kind of allegations that Mr. Howell apparently committed suicide over occurred during the time frame that [K.L.] was even living there. There's absolutely nothing to support that. All we know is that in 2009 there were allegations against Mr. Howell, and at that point he commits

suicide. But those—even those allegations were isolated to recent proximity in time to the suicide and not dating back to the time period that [K.L.] and Stephen and Tonya [K.L.'s mother] and everybody like that were living there. So we don't have any evidence at all that that stuff was going on even with Mr. Howell's own children during that time period.

And at this point we're just trying to throw a blanket across anything and, you know, the shotgun approach, trying to place the blame on somebody else. And I think it's highly irrelevant. It's more prejudicial than probative. And I don't think there has been a link established here to link Mr. Howell to these children in this sexual assault.

(Ex. B1 at 104-05). Defense counsel responded:

Well, Judge, the only thing I would say is, there's no firm timeline here as to when the allegations—we know when the allegations occurred involving Mr. Howell, and that was February 2009, but there's no established timeline for when that—that disclosure was in February 2009, but there's no timeline as to when those events occurred. For all we know they happened at the same time that [K.L.] was living there. We don't know that. That's not established.

And what Mr. Fuchs [the Prosecutor] is saying has some truth to it. Any one of these small issues in and of itself, there are—there has some weakness in linking up with the overall situation. But when taken as part of the entire picture, when you have the brothers touching, you have living with another sexual predator, when you have allegations made against her initial father, when you have all of these put together, it combines to create a different picture than any one of them individually does. And I think that's where the State's argument that it's sort of a shotgun approach is a little bit unfair to characterize it that way.

If the only thing that ever happened of a sexual nature involving this child was just the Jonathan Howell thing, that she happened to live

with somebody who, three years later, is accused of sexual misconduct, then I could understand the State's position better. But when you link it up with the fact that the brothers are touching her inappropriately, with the fact that the brothers have been involved in inappropriate touching at school to the point that they change schools and the whole family talks about it, when you have the fact of the other allegations that we've discussed, the entire picture changes and it ties itself together with each other. That would be our argument.

(Ex. B1 at 105-06).

The trial court ruled: "Well, based upon the proffer and argument, I am going to exclude the testimony. So I'm not going to allow the testimony of Deputy Smith and Detective Knight." (Ex. B1 at 107).

Crapser also sought to introduce evidence that there was inappropriate sexual touching between K.L. and her younger brother(s), and that one of K.L.'s brothers sexually touched other children at school or daycare. The defense proffered the testimony of Dr. Holmes, K.L.'s pediatrician, who testified that K.L. told her during an office visit on March 28, 2008, that her little brother touched her vagina. (Ex. B1 at 223-26 (trial proffer)). The State objected on grounds of relevance, hearsay, and that the probative value of the evidence was outweighed by unfair prejudice. (Ex. A1 at 73-74 (motion in limine); Ex. C at 297-98, 301 (pre-trial hearing); Ex. B1 at 103-06, 226-27) (trial)).

The trial court overruled the State's objection to Dr. Holmes's testimony, allowed Crapser to present evidence of K.L. being inappropriately touched by her brother(s), and denied the State's motion in limine to exclude that evidence: "Well, I'm going to allow that testimony. I'll let the jury give that whatever weight they want to give it. But I'm going to deny the motion in limine with regard to the touching by the brothers." (Ex. C at 301 (pretrial ruling); Ex. B1 at 231 (trial ruling)).

The jury heard the following evidence concerning K.L. being touched in the vaginal area by her brothers: (1) the videotape of the CPT interview of K.L. during which she told the interviewer that her brothers touched her vagina in the past (Ex. B1 at 151, 159); (2) Dr. Holmes's testimony that during an office visit on March 28, 2008, K.L. told her that her brother touched her vagina (Ex. B1 at 241-43); (3) Dr. Holmes's clinical record from the March 28, 2008, office visit, documenting K.L.'s statement that her little brothers touched her vagina once (Ex. B2 at 84 in ECF (Defendant's Exhibit 2 - medical record)); (4) K.L.'s mother's testimony that K.L. and her brothers touched each other inappropriately during joint bath times (Ex. B1 at 63); and (5) Crapser's testimony that K.L. and her brothers inappropriately touched each another (Ex. B1 at 266-68).

The defense also sought to introduce evidence that K.L.'s little brothers sexually touched other children. Specifically, the defense sought to question K.L.'s

mother about K.L.'s brothers engaging in sexual touching with other children at

daycare. (Ex. B1 at 63-65). The trial court sustained the State's objection to that line

of questioning, explaining: "Well, what the testimony is going to be is any kind of

activities the boys were involved, the boys were involved in at day care and whatever

relevance that is, I believe, is outweighed by the prejudicial effective [sic] testimony.

So I'm not going to allow that." (*Id*. at 65). Nonetheless, the jury learned, through

Defense Exhibit 2, that during K.L.'s office visit with Dr. Holmes on March 28,

2008, K.L.'s mother reported that her "middle son was molested at age 3 and though

he has been through counseling, he continues to do a lot of touching." (Ex. B2 at 84

in ECF).

### ii.    *The State Appellate Court's Decision*

Crapser sought review of the trial court's rulings on direct appeal. (Ex. D).

Crapser argued that the evidence was relevant to his "misattribution" defense and

that it tended to create a reasonable doubt about his guilt. (*Id*. at 39-40). The First

DCA affirmed Crapser's convictions without explanation. (Ex. G).

The First DCA's summary affirmance is an "adjudication on the merits"

entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99 ("When

a federal claim has been presented to a state court and the state court has denied

relief, it may be presumed that the state court adjudicated the claim on the merits in

the absence of any indication or state-law procedural principles to the contrary); *id*.

at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state

court to give reasons before its decision can be deemed to have been 'adjudicated on

the merits.'").

### iii.    *Application of § 2254(d) Standard*

In rejecting Crapser's claim on appeal, the First DCA concluded that the trial

court's exclusion of the evidence did not violate Crapser's right to present a complete

defense. The First DCA's rejection of Crapser's due process claim was not contrary

to, or an unreasonable application of, Supreme Court precedent.

Crapser argues that the state court's decision is contrary to the Supreme

Court's holdings in *Chambers* and *Holmes*. (Doc. 6 at 31-34). According to Crapser,

*Chambers* held that it is "[e]rror to exclude evidence that someone else committed

the charged crime regardless of state evidence law." (Doc. 6 at 31). Thus, Crapser

argues, the trial court's exclusion of the Howell evidence and sibling daycare

evidence under state evidence rules governing relevance and undue prejudice was

contrary to, or an unreasonable application of, *Chambers*. (Doc. 6 at 32).

Crapser mischaracterizes the holding in *Chambers*. Chambers was being tried

for murder and he called as a witness a man named "McDonald," who previously

confessed to the murder allegedly committed by the defendant. On the witness stand,

McDonald repudiated his confession. When the defense sought to examine McDonald as an adverse witness, the trial court prohibited the examination based on Mississippi's common law "voucher" rule, which prohibited parties from impeaching their own witnesses. *Chambers*, 410 U.S. at 294. The trial court also prohibited the defense from introducing evidence that McDonald made self-incriminating statements to three other persons, based on Mississippi's hearsay rule, which did not include an exception for statements against penal interest.

The Supreme Court in *Chambers* reaffirmed that a defendant's right to present evidence in his own defense is not absolute and unlimited—"the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302. The constitutional error in *Chambers* arose because the trial court excluded evidence "critical" to Chambers's defense by arbitrarily and mechanistically applying two state rules of evidence "to defeat the ends of justice." *Id*. at 303.

The Court ruled that the trial court's application of Mississippi's "voucher" rule to prohibit Chambers from cross-examining McDonald was arbitrary, because that rule "bears little present relationship to the realities of the criminal process," and the State had not even attempted to defend or explain the rule's underlying rationale.

*Id*. at 302. The Court also held that the trial court's application of Mississippi's hearsay rule to prohibit Chambers from calling witnesses to testify about McDonald's naming himself as the murderer was improperly "mechanistic[ ]," because the evidence "bore persuasive assurances of trustworthiness and thus was well within the basic rationale of the exception for declarations against interest." *Id*.

But the Court in *Chambers* also cautioned against interpreting its holding too broadly:

> We conclude that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process. In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial.

410 U.S. at 302-03.

Crapser likewise misinterprets the Court's holding in *Holmes*. Crapser states that the Court in *Holmes* recognized that Supreme Court precedent "ensured a criminal defendants' [sic] right to present evidence that someone else could have committed the charged crime even where state evidence codes are cited to exclude

Page 22 of 36

such evidence as irrelevant or too speculative." (Doc. 6 at 34). That is not what the Court in *Holmes* held or even suggested.

In *Holmes*, a defendant charged with murder, rape, and other crimes sought to introduce evidence that another man, White, committed the offenses. The State had substantial forensic evidence (fiber, DNA, and fingerprint) linking Holmes to the crimes. At a pretrial hearing, Holmes proffered several witnesses who placed White in the victim's neighborhood on the morning of the assault, as well as four additional witnesses who testified that White either acknowledged that Holmes was innocent or admitted that he (White) committed the crimes. One of the witnesses also testified that a police officer asked the witness to testify falsely against Holmes and that employees of the prosecutor's office, while soliciting the witness's cooperation, spoke of manufacturing evidence against Holmes. White testified at the pretrial hearing and denied making the incriminating statements. White also provided an alibi, but another witness refuted his alibi. *Holmes* 547 U.S. at 323.

The trial court excluded the proffered third-party guilt evidence under a state evidence rule "under which the defendant may not introduce proof of third-party guilt if the prosecution has introduced forensic evidence that, if believed, strongly supports a guilty verdict." *Holmes*, 547 U.S. at 321. Applying that state standard, the state court held that Holmes's proffered evidence was properly excluded because it

could not "overcome the forensic evidence against him to raise a reasonable inference of his own innocence." *State v. Holmes*, 605 S.E. 2d 19, 24 (S.C. 2004).

The Supreme Court began its analysis by confirming that "[s]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," *Holmes*, 547 U.S. at 324, but that the Constitution prohibits the exclusion of defense evidence under rules that "infringe upon a weighty interest of the accused" and are "arbitrary" (do not serve any legitimate interests) or "disproportionate to the purposes they are designed to serve." *Id.* (internal quotations omitted). The Court noted that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Id.* at 326 (citations omitted).

The Court then stated:

> Plainly referring to rules of this type, we have stated that the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant[,] or poses an undue risk of harassment, prejudice, or confusion of the issues.
>
> A specific application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged. *See, e.g.*, 41 C.J.S., *Homicide* § 216, pp. 56-58 (1991) ("Evidence tending to show the commission by another person of the crime charged may be introduced by accused when it is inconsistent

with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded"); 40A Am. Jur. 2d, *Homicide* § 286, pp. 136-138 (1999) ("[T]he accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged . . . [Such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial" (footnotes omitted)).

*Holmes*, 547 U.S. at 326-27 (internal quotation marks and citations omitted from first paragraph). The Court then clarified: "*Such rules are widely accepted, and neither petitioner nor his amici challenge them here*." *Id*. at 327 (emphasis added).[4]

The constitutional problem in *Holmes* was that the state rule "d[id] not focus on the probative value or the potential adverse effects of admitting the defense evidence of third-party guilt." *Id*. at 329.  Instead, the rule focused on "the strength of the prosecution's case: If the prosecution's case is strong enough, the evidence of third-party guilt is excluded even if that evidence, if viewed independently, would have great probative value and even if it would not pose an undue risk of harassment, prejudice, or confusion of the issues." *Id*.

---

[4] Thus, contrary to what Crapser suggests in his supporting memorandum, nothing in the *Holmes* opinion suggests that a defendant has a right to present third-party guilt evidence "even where state evidence codes are cited to exclude such evidence as irrelevant or too speculative." (Doc. 6 at 34).

In *Nevada v. Jackson*, *supra*, the Court re-emphasized the narrowness of its holdings in *Chambers* and *Holmes*: "Only rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Jackson*, 569 U.S. at 509 (citing *Holmes*, 547 U.S. at 331 (rule did not rationally serve any discernible purpose); *Rock v. Arkansas*, 483 U.S. 44, 61 (1987) (rule arbitrary); *Chambers*, 410 U.S. at 302-03 (State did not even attempt to explain the reason for its rule); *Washington v. Texas*, 388 U.S. 14, 22 (1967) (rule could not be rationally defended)).

Here, the record establishes that the trial court focused on, and excluded the Howell evidence because it did not sufficiently connect Howell to the charged crimes against K.L., and its probative value, if any, was substantially outweighed by unfair prejudice.[5] Similarly, in excluding the evidence concerning K.L.'s brothers inappropriately touching other children at daycare, the trial court reasoned that the proffered evidence had little relevance and that any negligible probative value was outweighed by unfair prejudice. The trial court's exclusion of Crapser's evidence under Florida's evidence rules was neither arbitrary nor disproportionate to the purpose those rules were designed to serve. *See* Fla. Stat. § 90.401 ("Relevant

---

[5] Defense counsel candidly acknowledged a lack of sufficient connection.

evidence is evidence tending to prove or disprove a material fact."); Fla. Stat. § 90.403 ("Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."). Further, unlike in *Chambers* and *Holmes*, the exclusion of the evidence did not prevent Crapser from presenting his "misattribution" defense.

Looking through the AEDPA lens, the First DCA's rejection of Crapser's due process claim was not contrary to, and did not involve an unreasonable application of, *Chambers*, *Holmes*, or any other Supreme Court precedent. No decision of the Supreme Court suggests that excluding the third-party guilt evidence in this case was unconstitutional. *See, e.g., Jackson*, 569 U.S. 509-12 (holding that the state court reasonably applied federal law when it determined that petitioner was not denied a right to present a complete defense when he was barred from presenting extrinsic evidence of the victim's prior, uncorroborated accusations of sexual assault). Crapser is not entitled to federal habeas relief on Ground Two.

**Ground Three**     **"The State courts unreasonably applied well-established federal law from the Supreme Court of the United States (*Strickland*) and/or failed to properly extend such well-established federal law to this case relating to trial counsel's failure to insure that the Petitioner's jury was instructed on the applicable lesser-included offenses for count two in the same**

**manner as they had been instructed on the applicable lesser-included offense on count one." (Doc. 1 at 17).**

Crapser next claims that he was denied his right to effective assistance of counsel when his trial counsel failed to request jury instructions on lesser-included offenses for lewd and lascivious molestation (Count II). (Doc. 1 at 18; Doc. 6 at 35-43). The State asserts that to the extent Crapser claims that counsel should have requested an instruction on the lesser-included offense of simple battery, his claim is exhausted, but to the extent he expands his claim to assert that counsel also should have requested instructions on other lesser-included offenses, that aspect of his claim is procedurally defaulted because Crapser did not present his broader allegation to the state postconviction trial court, and instead raised it for the first time in his postconviction appeal. (Doc. 11 at 41). This court has reviewed the record of Crapser's state postconviction proceeding (Ex. J), and concludes that Crapser properly exhausted his ineffective assistance claim.

## A.    Clearly Established Federal Law

The Supreme Court follows a two-pronged test for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First,

petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and show that counsel's performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) ("To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances.") (quotation marks and alterations omitted).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* "The

likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## B.    Section 2254 Review of State Court's Decision

Crapser claimed in Ground Four of his counseled amended Rule 3.850 motion, that trial counsel was ineffective "because counsel failed to insure the jury

instructions included a lesser-included offense on Count 2." (Ex. J at 13-14). The state court held an evidentiary hearing where Crapser was represented by counsel. (Ex. J at 34-63). Crapser did not call any witnesses. The State called trial defense counsel John Leace. The parties' arguments concerning Ground Four focused on the Florida Supreme Court's decision in *Sanders v. State*, 946 So. 2d 953, 956 (2006) (holding that under *Strickland*, a defendant cannot, as a matter of law, demonstrate prejudice by relying on the possibility of a "jury pardon" by convicting the defendant of a lesser offense, when it has convicted the defendant of the greater offense).

After considering Attorney Leace's testimony and the parties' arguments, the postconviction trial court denied Crapser's claim for these reasons:

> [R]elated to Ground 4, I'm going to find that there's no deficient conduct on behalf of Mr. Leace. I don't think that the charging docket —document alleges the essential elements of misdemeanor battery. And although Mr. Leace testified that he didn't specifically consider the lesser, it was his opinion that it would be kind of an all or nothing verdict in the case. And for that reason, he was not focused on the lesser. And then I'm also going to find that there's no prejudice, based on all the facts in this case; as well as the Sanders decision, which is still good law. It's a [Florida] Supreme Court opinion.
>
> And then, even looking at these two other cases presented by the defense, I don't think Facin, which is spelled F-A-C-I-N, is really directly on point, or really changes Sanders. And then Gordon cites to the Spencer case, but it cites to the First DCA Spencer case, when it was at the First, as opposed to the Supreme Court opinion. Oh, I'm sorry, Sanders is the Supreme Court opinion. It cites to Spencer, which is another case, I guess, that's similar, I don't know. But based on the

> Sanders case, which is at 946 So. 2d 953, as well as the facts in this
> case, I'm going to find that there's no prejudice on Ground 4

(Ex. J at 61-62). The court's oral ruling was followed by a written order. (Ex. J at 29-30). The order identified *Strickland* as the controlling legal standard and denied relief "for the reasons stated on the record." (Ex. J at 32-33). The First DCA summarily affirmed. (Ex. N).

The First DCA's summary affirmance is an "adjudication on the merits" entitled to deference under 28 U.S.C. § 2254(d). *See Richter*, 562 U.S. at 99, 100. Consistent with *Wilson v. Sellers,* 584 U.S. __, 138 S. Ct. 1188, 1192 (2018), this court "look[s] through" the First DCA's unexplained decision to the circuit court's order denying postconviction relief, and presumes that the First DCA adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192.

The state court's rejection of Crapser's claim was consistent with *Strickland*'s prejudice standard. Under *Strickland*, a court must presume that the jury acted according to the law:

> In making the determination whether the specified errors resulted
> in the required prejudice, a court should presume, absent challenge to
> the judgment on grounds of evidentiary insufficiency, that the judge or
> jury acted according to law. An assessment of the likelihood of a result
> more favorable to the defendant must exclude the possibility of
> arbitrariness, whimsy, caprice, "nullification," and the like. A
> defendant has no entitlement to the luck of a lawless decisionmaker,
> even if a lawless decision cannot be reviewed. The assessment of

> prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies [sic] of the particular decisionmaker, such as unusual propensities toward harshness or leniency.

466 U.S. at 694-95.

Under Florida law, a jury is permitted to convict on a lesser-included offense "only if it decides that the main accusation has not been proved beyond a reasonable doubt." *Sanders*, 946 So. 2d at 958. The jury in Crapser's trial concluded that the main accusation—that Crapser committed a lewd or lascivious act on K.L.—was proved beyond a reasonable doubt. Thus, even if the lesser-offense instructions had been given, the jury would not have been permitted to convict Crapser of any lesser-included offense.

Because Crapser failed to show that it was reasonably probable the result of his trial would have been different had counsel requested the lesser-offense instructions, the state court reasonably determined that *Strickland*'s prejudice prong was not satisfied.[6] *See Strickland*, 466 U.S. at 694; *Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."); *see also, e.g., Santiago v. Sec'y, Fla. Dep't of Corr.*, 472 F. App'x 888, 889 (11th Cir. 2012)

---

[6] Crapser does not claim there was insufficient evidence to support his conviction for lewd or lascivious molestation.

(per curiam) (holding that the state court did not unreasonably apply *Strickland* when it rejected an ineffective assistance claim arising from counsel's failure to request lesser-offense instructions: "The jury in [the defendant's] trial concluded that the evidence against him supported his conviction for the greater offenses on which it was instructed; therefore, even if the lesser-offense instructions had been given, the jury would not have been permitted to convict [the defendant] of the lesser included offenses because it had concluded that the evidence established that he was guilty of the greater offenses."). Crapser is not entitled to habeas relief on Ground Three.

## IV. Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is

whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V.    Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The petition for writ of habeas corpus (Doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Eric M. Crapser*, Leon County Circuit Court Case No. 2008-CF-1943, be **DENIED**.

2. The District Court **DENY** a certificate of appealability.

3. The clerk of court close this case.

At Panama City, Florida, this 25th day of February, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**